IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JESSICA VANBERG, | CV 21–99–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| KILOLO KIJAKAZI, | |
| Defendant. | |

Plaintiff Jessica Vanberg brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). The Court will affirm the Commissioner's decision and dismiss this case because substantial evidence supports the Administrative Law Judge's ("ALJ") findings that Plaintiff is not disabled within the meaning of the SSA.

## BACKGROUND

Plaintiff filed an application for disability benefits under Title II on July 22, 2019. (Doc. 5 at 17.) Plaintiff initially alleged a disability onset date of April 1, 2018, but later amended the onset to July 3, 2018. (*Id.*) Plaintiff's claims were denied initially on January 13, 2020 and upon reconsideration on February 25, 2020. (*Id.*) Following a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claims on April 7, 2021. (*Id.* at 17–33.) On July 14, 2021, the Appeals

Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). (*Id.* at 5.)

## LEGAL STANDARDS

### I. Standard of Review

42 U.S.C. § 405(g) allows limited judicial review of Social Security benefit determinations after the Commissioner, following a hearing, has entered a final decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The Court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U. S. 197, 229 (1938)). If the ALJ's decision is supported by such evidence and the ALJ applied the correct legal standards, the Court must affirm the Commissioner's adoption of that decision. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Thus, "[w]here evidence is susceptible to more than one rational interpretation," the Court must

uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will not reverse an ALJ's decision for errors that are harmless. *Id.*

## II.   Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) they suffer from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).

In determining whether a claimant qualifies as disabled under the Social Security Act, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the claimant bears the burden of establishing disability. *Burch*, 400 F.3d at 679. If she meets this burden, the burden of proof shifts to the Commissioner in step five. *Id.*

In step one of the evaluation, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is, then they are not disabled under the meaning of the Social Security Act. *Id.* If they are not, the ALJ proceeds to the second step in the evaluation.

In step two, the ALJ determines whether the claimant has any impairments—singly or in combination—that qualify as severe under the applicable regulations and have lasted or are expected to last at least twelve (12) months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments qualifies as severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant does not have a severe impairment, the claimant is not disabled within the meaning of the Social Security Act. *Id.* If the claimant has a severe impairment, the ALJ proceeds to the third step.

In step three, the ALJ compares the claimant's impairments to the listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is disabled. *Id.* If the claimant's impairments do not, the ALJ proceeds to step four. If the evaluation continues beyond step three, the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's residual functional capacity is the most that the claimant can still do in a work setting despite the physical and mental limitations caused by their impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In step four, the ALJ determines whether the claimant retains the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If they do, the claimant is not disabled. *Id.* If their RFC does not permit them to engage in past relevant work, the ALJ proceeds to step five.

In step five, the ALJ determines whether, considering the claimant's RFC, age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner bears the burden to prove this and can do so through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## DISCUSSION

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 3, 2018. (Doc. 5 at 19.) The ALJ noted that Plaintiff had last worked as a real-estate agent in December 2020 and cited 20 C.F.R. § 404.1571 for the proposition that even if work a claimant has done was not substantial gainful activity, it may show that the claimant is able to do more work than she actually did. (*Id.*)

At step two, the ALJ determined that Plaintiff had the following severe impairments: systemic lupus erythematosus (SLE) with secondary Raynaud's and Sjogren's syndrome; migraine headaches; depression; and anxiety. (Doc. 5 at 20.) The ALJ determined these impairments significantly limit Plaintiff's ability to perform basic work functions. (*Id.*) The ALJ also noted additional nonsevere symptoms and/or impairments: antiphospholipid syndrome with a history of deep vein thrombosis (DVT) and pregnancy loss, and autoimmune hepatitis. (*Id.*) The ALJ further noted that Plaintiff had recently been diagnosed with fibromyalgia and found that the requirements of SSR 12-2p were not met in Plaintiff's case during the period in question. (*Id.* at 20–21.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21.)

The ALJ found that Plaintiff had the residual functional capacity to perform light work as follows:

> [S]he can lift/carry/push/pull 20 pounds occasionally, and 10 pounds frequently. She can stand and/or walk for only four hours in an 8-hour workday with normal breaks, and can sit for six hours in an 8-hour workday with normal breaks. Normal breaks are defined as breaks every two hours with two breaks lasting at least 10-minutes and one lasting at least 30-minutes. She can occasionally climb ramps or stairs, and ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, and crouch. She can occasionally crawl. The claimant must avoid concentrated exposure to extreme temperatures and hazards. She can understand, remember, and carry out simple tasks, and can maintain

>attention, concentration, persistence, and pace for such tasks for an 8-hour workday and 40-hour workweek. She can tolerate occasional interaction with supervisors, co-workers, and the public. She can tolerate simple work situations. She can tolerate occasional changes in routine work settings.

(*Id.* at 24.)

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a certified nurse assistant, bank teller, personal banker, and vault lead. (*Id.* at 31.) Proceeding to step five, the ALJ found, based on the vocational expert's testimony, that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including stock checker (22,000 jobs in the national economy, eroded by 30 percent with all limitations in the RFC), office helper (52,000 jobs in the national economy, eroded by 30 percent with all limitations in the RFC), assembler (300,000 jobs in the national economy), and silver wrapper (52,000 jobs in the national economy). (*Id.* at 31–32.) Accordingly, the ALJ found Plaintiff not disabled. (*Id.* at 32–33.)

Plaintiff asserts that the ALJ erred in four respects: (1) by failing to conclude that Plaintiff is disabled under Adult Listing 14.00; (2) by improperly discounting the opinion of Plaintiff's treating physicians; (3) by failing to provide specific, clear, and convincing reasons for discounting the credibility of Plaintiff's testimony; and (4) by failing to incorporate all of Plaintiff's impairments into her

RFC, thereby leading to deficient hypothetical questions to the vocational expert. (Doc. 7 at 18–35.)

## I. The ALJ Correctly Found that Plaintiff's Impairments Do Not Meet or Exceed the Listings In Section 14.00

At step three, the ALJ considered Plaintiff's lupus under listing 14.02, *Systemic lupus erythematosus*, and Plaintiff's Sjogren's syndrome under listing 14.10, *Sjogren's syndrome*. (Doc. 5 at 21–22.) As to listing 14.02, the ALJ found that

> the claimant's lupus does not involve two or more of the organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). Neither does the claimant have repeated manifestations of lupus, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: limitation of activities of daily living; limitation in maintaining social functioning; or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

(*Id.* at 21.) The ALJ found that Plaintiff's Sjogren's syndrome did not meet or exceed listing 14.10 for the same reasons. (*Id.*)

First, Plaintiff contends that the ALJ erred by (1) evaluating her only under listing 14.02 when she also suffers from inflammatory arthritis (14.09) and

undifferentiated and mixed connective tissue disease (14.06). (Doc. 7 at 18–19.)[1]

However, as Defendant notes, each of these listings includes the same criteria:

> A. Involvement of two or more organs/body systems, with:
>   1. One of the organs/body systems involved to at least a moderate level of severity; and
>   2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> or
>
> B. Repeated manifestations of [disease], with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>   1. Limitation of activities of daily living.
>   2. Limitation in maintaining social functioning.
>   3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpt. P, App. 1 §§ 14.02, 14.06, 14.09, 14.10. Although listing 14.09, inflammatory arthritis, also has two other sets of qualifying criteria, Plaintiff does not argue that she meets either of those. Accordingly, the ALJ's findings concerning the involvement of organs/body systems, constitutional symptoms or signs, and marked limitations are sufficient to find that Plaintiff does not meet or exceed any of those listings unless those findings themselves are erroneous.

Second, Plaintiff argues that the ALJ erred by finding that she did not establish that two or more organs/body systems were involved because she has

---

[1] Plaintiff mistakenly contends that the ALJ also did not evaluate her under the listing for Sjogren's syndrome (14.10). (*See* Doc. 5 at 21.)

SLE, inflammatory arthritis, antiphospholipid syndrome, Sjogren's syndrome, Raynaud's phenomenon, skin disorders, and hepatitis, and at least one organ/body system is involved to a moderate level of severity because of her arthritis, antiphospholipid syndrome, ongoing skin disorder, and SLE "brain fog." (Doc. 7 at 20). The ALJ found that Plaintiff's additional impairments (other than SLE with secondary Raynaud's and Sjogren's syndrome, migraine headaches, depression, and anxiety) "have caused only transient and mild symptoms and limitation, are well controlled with treatment . . . or are otherwise not adequately supported by the medical evidence in the record[.]" (Doc. 5 at 20.) In particular, as to Plaintiff's hepatitis, the ALJ found that it was well managed with treatment and she has not required ongoing treatment by a hepatic specialist, and as to Plaintiff's antiphospholipid syndrome, the ALJ found that she was on chronic warfarin and there was no evidence of recurrent thrombosis since the amended alleged onset date. (*Id.*) The ALJ discussed the medical evidence and Plaintiff's testimony in greater detail in assessing her RFC. (*Id.* at 25–27.) The ALJ found that Plaintiff's "lupus is reasonably well managed on appropriate medication therapy" and that her "allegations of debilitating pain, weakness, stiffness, and fatigue are not supported by the objective medical findings, as exams reveal mostly benign findings" as detailed in the ALJ's opinion. (*Id.* at 26–27.) These findings are a reasonable interpretation of the record evidence and thus are supported by substantial

10

evidence. The Court is not persuaded by Plaintiff's argument that the ALJ's findings of moderate *limitations* arising from Plaintiff's impairments equate to a finding of moderate *severity* in the involvement of at least one organ/body system in her lupus or other autoimmune conditions. (Doc. 9 at 6.) Regardless, the Court finds that any error in the ALJ's findings as to these criteria is rendered harmless by the ALJ's finding that Plaintiff did not have at least two of the constitutional signs or symptoms of an autoimmune disorder.

Third, Plaintiff argues that the ALJ erred by finding that she did not have at least two of the constitutional signs or symptoms of an autoimmune disorder because she suffers from fatigue, fevers, and malaise. (Doc. 7 at 21–23.) Listing 14.00 defines severe fatigue as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.00(C)(2). Malaise is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." *Id.* The ALJ found that Plaintiff's "allegations of debilitating pain, weakness, stiffness, and fatigue are not supported by the objective medical findings" discussed in the ALJ's opinion. (Doc. 5 at 25–27.) Specifically, the ALJ found:

> There is no evidence of complications involving the kidneys, brain and central nervous system, blood and blood vessels, lungs, or heart. Of significance are the claimant's adoption and care for two infants, as well as caring for her biological daughter, and her ability to obtain a

11

> real estate license and pursue work as a real estate agent after the amended alleged onset date. Such activities are inconsistent with and do not support her testimony that, on a "good day," she reclines with her legs up throughout the day, up to six times a day for an hour each time; on a good day she takes one hour-long nap; and on her 5 "bad days" per week, she is in bed all day. The undersigned is unpersuaded by the claimant's testimony that her father, who moved from Texas and lives 30 minutes away from her, and her husband, who works full time, help her with child care of an infants/toddlers/child in elementary school, as well as homecare. Based on the claimant's unpersuasive testimony, it would appear she would need more consistent childcare assistance at least 5 days per week, even if her children are in school and daycare, as she testified.

(*Id.* at 27.) As discussed in greater detail in the ALJ's assessment of Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, "they are not entirely consistent with the claimant's activities of daily living." (*Id.* at 29.) As late as February 2020, Plaintiff claimed in a Function Report that she could prepare meals, perform some household chores, drive a car, go out alone, shop in stores for groceries and household goods, handle money, and drop off and pick up her children from day care. (*Id.*) Because, as discussed in greater detail below, the ALJ thereby provided specific, clear and convincing reasons for discounting Plaintiff's testimony about her subjective symptoms, substantial evidence supports the ALJ's finding that Plaintiff's fatigue and malaise did not rise to the level of constitutional signs or symptoms of her autoimmune disorder as defined by the regulations.

Fourth, Plaintiff contends that the ALJ erred by failing to provide a rationale for not evaluating her other autoimmune disorders, which she contends establish equivalency with listing 14.00. (Doc. 7 at 23.) Because this argument is based on Plaintiff' "extreme fatigue and malaise," and because the Court finds that the ALJ's findings concerning these symptoms' severity is supported by substantial evidence, the Court concludes that the ALJ did not err by declining to discuss whether Plaintiff's impairments established equivalency with a listed impairment.

## II. The ALJ Was Not Required to Analyze Pain Scores as "Medical Opinions"

Plaintiff argues that the ALJ erred in discounting her treating providers' unrebutted opinions that she suffers from severe pain by failing to discuss the opinions of one provider (Luce) entirely and failing to expressly provide clear and convincing reasons for rejecting the other provider's (Oikonomopoulis) opinions. (Doc. 7 at 23–25.)

Because Plaintiff filed her claim after March 27, 2017, the ALJ's analysis of medical opinions is governed by recent regulatory amendments. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). The applicable regulation defines a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in specified abilities. 20 C.F.R. § 404.1513(a)(2). The

13

Court agrees with Defendant that the "Core Scores" pain scores cited by Plaintiff, which merely provide a numerical "Pain Score," "Patient's Global Estimate," and "RAPID 3 Cumulative Score," do not fit the regulatory definition of a medical opinion.  (*See, e.g.*, Doc. 5 at 331.)  Thus, the ALJ was not required to articulate how this evidence was considered under 20 C.F.R. § 404.1520c.

Even if these "Core Scores" could be characterized as medical opinions regarding the severity of Plaintiff's pain, the ALJ's findings that Plaintiff's objective medical evidence and daily activities were not consistent with allegations of such severe pain is supported by substantial evidence.  The 2017 amended regulations supplanted the Ninth Circuit's longstanding hierarchy of medical opinions, providing that "there is not an inherent persuasiveness" to evidence from a claimant's medical sources over government consultants, and vice versa.  *Woods*, 32 F.4th at 791.  Now, the supportability (by objective medical evidence and supporting explanations) and consistency (with evidence from other medical sources and nonmedical sources) of medical opinions are "the most important factors" an ALJ must consider when determining how persuasive a medical source's medical opinions are.  20 C.F.R. §§ 404.1520c(b)(2), (c)(1)–(2).  Other relevant factors include the source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining

14

relationship), specialization, and other factors such as the source's familiarity with other evidence in a claim and the source's understanding of SSA program policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The ALJ properly relied on the lack of supportability and consistency of Plaintiff's pain scores with the objective medical evidence and nonmedical evidence in the record concerning Plaintiff's activities, as discussed in greater detail below. In sum, the ALJ did not err by not expressly discussing Plaintiff's "Core Scores."

## III. The ALJ Properly Discounted Plaintiff's Claims Regarding Her Subjective Symptoms

Plaintiff argues that the ALJ erred in finding her testimony not entirely consistent with the medical record without providing specific, clear, and convincing reasons for discounting her testimony. (Doc. 7 at 25–32.)

Where, as here, an ALJ finds that a Plaintiff has provided objective medical evidence of an impairment which might reasonable produce pain or other alleged symptoms, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). An ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722

15

(9th Cir. 1998)). The ALJ met this standard. The ALJ provided a detailed summary of Plaintiff's testimony concerning her lupus symptoms (Doc. 5 at 25), found that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (*id.*), and provided two full pages of explanation with numerous citations to objective medical findings and Plaintiff's testimony concerning her activities following the alleged onset date (*id.* at 25–27). The ALJ repeated the same process for Plaintiff's migraines and headaches (*id.* at 27–28) and depression and anxiety (*id.* at 28–30).

Plaintiff contends that the ALJ overlooked various aspects of her testimony and arbitrarily relied upon her daily activities to discredit her subjective symptom testimony. (Doc. 7 at 27–31.) While it is true that the Social Security Act "does not require that claimants be utterly incapacitated to be eligible for benefits," "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1502(a). Daily activities may form the basis of an adverse credibility determination when they

contradict the claimant's testimony or meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

As to contradicting testimony, in discussing Plaintiff's subjective symptom complaints as they related to her lupus, the ALJ here found that Plaintiff's adoption and care for two infants and her ability to obtain a real estate license and pursue work as a real estate agent after the amended alleged onset date were inconsistent with her testimony that "on a 'good day,' she reclines with her legs up throughout the day, up to six times a day for an hour each time; on a good day she takes one hour-long nap; and on her 5 'bad days' per week, she is in bed all day." (Doc. 5 at 27.) The ALJ further found that her testimony regarding her "bad days" would necessitate more consistent childcare assistance than Plaintiff described receiving. (*Id.*) As to potentially meeting the threshold for transferable work skills, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects were not entirely consistent with her ability to handle personal care, care for her children, prepare meals, clean, drive a car, go out alone, shop in stores, handle money, get along with others, do laundry, vacuum, drop off and pick up her children from daycare, and work part-time as a real estate agent. (*Id.* at 29–30.) These are not activities like "reading, watching television, and coloring in coloring books" that were consistent with testimony regarding debilitating symptoms or are "so undemanding that they cannot be said to bear a meaningful relationship to the

17

activities of the workplace." *Orn*, 495 F.3d at 639. Accordingly, substantial evidence supports the ALJ's credibility determination. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's adverse credibility determination as reasonable and supported by substantial evidence even though testimony was equivocal about how regularly claimant was able to undertake daily activities of childcare, chores, and shopping); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (affirming ALJ's adverse credibility determination because ability to prepare meals, do laundry and yard work, and provide occasional child care were evidence of ability to work).

## IV. Substantial Evidence Supports the ALJ's Decision at Step Five

Plaintiff argues that the vocational expert's testimony was unreliable because the ALJ asked the expert two hypotheticals regarding light work positions involving only exertional limitations, but uncontested medical record evidence demonstrates that she suffers from many non-exertional limitations, including severe fatigue, side effects of medications contributing to her fatigue and mental limitations, and severe pain. (Doc. 7 at 32–35.) Accordingly, she argues, the ALJ's decision at step five is not supported by substantial evidence.

The ALJ specifically noted that Plaintiff's symptoms warranted non-exertional limitations in her RFC, including "limitations to simple, routine tasks involving simple work situations, occasional changes in routine work settings, and

occasional interaction with supervisors, co-workers, and the public." (Doc. 5 at 29.) These non-exertional limitations were included in the hypotheticals posed to the vocational expert. (*Id.* at 65–67.) Accordingly, Plaintiff is incorrect that they hypotheticals posed to the vocational expert included only exertional limitations. 20 C.F.R. § 404.1569a (defining exertional and non-exertional limitations).

To the extent Plaintiff's argument is that greater limitations were required because of the ALJ's alleged errors in discounting Plaintiff's subjective symptom testimony, that argument fails for the reasons described above concerning the ALJ's appropriate findings relating to Plaintiff's credibility.

## CONCLUSION

Accordingly, IT IS ORDERED that the Commissioner's decision is AFFIRMED, and this case is DISMISSED. The Clerk of Court shall close this matter and enter judgment in favor of Defendant pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DATED this 9th day of March, 2023.

_____
Dana L. Christensen, District Judge
United States District Court